[Cite as *State v. Gurley*, 2018-Ohio-4152.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| PATRICK GURLEY, | : | Case No. 18-CA-16 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Licking County
                            Municipal Court, Case No.
                            18CRB00024

JUDGMENT:                   Affirmed

DATE OF JUDGMENT:           October 11, 2018

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

TRICIA M. MOORE                         MAX SUTTON
40 W. Main Street                       3 N. 3rd Street
Newark, Ohio 43055                      Newark, Ohio 43055

*Baldwin, J.*

{¶1}    Defendant-appellant Patrick Gurley appeals his conviction and sentence from the Licking County Municipal Court. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    On January 3, 2018, appellant was charged with one count of assault in violation of R.C. 2903.13, a misdemeanor of the first degree, and one count of disorderly conduct in violation of R.C. 2917.11, a misdemeanor of the fourth degree. At his arraignment on January 4, 2018, appellant entered a plea of not guilty to both charges.

{¶3}    A bench trial was held on February 13, 2018 at which appellant appeared pro se. Ronald Smith testified that he was a porter at the Travel America (TA) Truck Stop in Hebron, Ohio and ran the truck lot. He testified that he was working on January 3, 2018 when it came to his attention that a truck was blocking another truck in. He testified that one of the trucks belonged to appellant and the other to Mr. Umidjon Ishnazarov. Mr. Ishnazarov came into the truck stop and told Smith that appellant was blocking in his truck so that he could not leave. When asked what he did, Smith testified as follows:

{¶4}    A: Um…he [Ishnazarov] was parked over by the diesel islands by the truck service station and I told him to pull around and to stop where his trailer was and I would run after him and he pulled up to it and I saw Mr. Gurley [appellant] walking his dog and I walked up to him and asked him if he could please move his truck and then he started yelling at me and the other truck driver.

{¶5}    Transcript at 10.

{¶6}    According to Smith, where appellant's truck was parked made it difficult for the other driver to leave.

**{¶7}** Smith testified that he approached appellant and asked him to move his truck and that appellant yelled at him, swore at him and started walking up to him in an aggressive manner. Smith testified that he told appellant when appellant was walking towards him that it was not worth getting all worked up about and that "I was happy to go back to where I was as long as we could just both move on our way." Transcript at 13. However, that did not stop appellant from coming at him. Another truck driver stood in-between the two and asked appellant politely to stop. According to Smith, appellant "pushed both of us and then I went to grab the other guy and started pulling him away before it got any worse and then as I was pulling the other guy away he punched both of us in the face." Transcript at 11. The other guy was Umidjon Ishnazarov. Smith testified that, as a result, his glasses were bent a little and he had to bend them back into shape. After the police were called, Smith filled out a police report.

**{¶8}** On cross-examination, Smith testified that when he came out with the other truck driver, he saw appellant standing between the trucks over by the grass walking his dog. He testified that appellant's truck was in a legal parking space and was blocking Ishnazarov's dropped trailer which was in a legal parking place. When asked by appellant if, when Smith was pulling Ishnazarov away, he had noticed that Ishnazarov had appellant by the shirt collar, Smith testified that he did not.

**{¶9}** On redirect, Smith testified that after the assault, appellant "turned around and grabbed his dog and put the dog in the truck and then grabbed out a small metal pipe and started swinging it around" and he had the other truck driver move his truck so that appellant could not leave the scene. Transcript at 24.

{¶10} Deputy Dan Pennington testified that on January 3, 2018, he responded to a possible assault at the TA Truck Stop on Lancaster Road.   Smith, appellant and Ishnazarov were all still at the scene and Smith showed the Deputy his bent glasses. The Deputy then made contact with appellant who was still inside his truck and ordered him out of the truck and cuffed him. The following testimony was adduced when Deputy Pennington was asked what appellant advised him about the incident:

{¶11}  A:  He said that the person asked him to move his truck because it was blocking the other driver's truck in and he said that he was more than happy to do it but he was going to do it after he was done walking his dog because he was going to leave and then he said the other drive approached him and began pushing him.

{¶12}  Q:  And did he say anything about throwing a punch?

{¶13}  A:  He did throw a punch after he was pushed.

{¶14}  Q:  Okay and who did he say that punch hit?

{¶15}  A:  He said that it hit the other driver I believe.

{¶16}  Q:  Did he mention um…in your report did he ever mention anything about striking Ronald [Smith]?

{¶17}  A:  I don't recall.

{¶18}  Q:  Okay if I show you a report would that refresh your recollection?

{¶19}  A:  Yes it would.

{¶20}  Q:  Can you take a look at that and let me know when you are finished?

{¶21}  A:  Okay yes.

{¶22}  Q:  And did that refresh your recollection as to what Mr. Gurley told you?

{¶23}  A:  Yes it did.

**{¶24}** Q: And what did he tell you?

**{¶25}** A: He said that he swung at the driver and he missed the driver and that he struck Ronald [Smith].

**{¶26}** Transcript at 27-28. After collecting statements from everyone, Deputy Pennington arrested appellant for assault.

**{¶27}** On cross-examination, Deputy Pennington testified that appellant was initially hostile when he got out of his truck, was swearing and yelling at him and was uncooperative. Appellant eventually complied and the Deputy walked him to the car.

**{¶28}** Appellant testified at trial on his own behalf. He testified that he owned his own truck and that he knew that he had blocked the truck in, but that he told the two men that he was leaving as soon as his dog was finished going the bathroom. Appellant testified that as he was walking toward his truck, the two men came between him and his truck and that appellant again said that he was leaving and also told Ishnazarov that his trailer was in a no parking zone. According to appellant, Ishnazarov then grabbed him by the shirt and claimed to be parked in a legal parking zone. Appellant testified that he knocked Ishnazarov's hands off of him and told him not to touch him. Appellant denied ever striking Ronald Smith, but testified that he was only trying to knock Ishnazarov's hands off of him and that Ishnazarov's hand struck Smith. He further testified that Ishnazarov followed him to his truck and that appellant grabbed his metal tire thumper and "I spun it around and I said leave me alone." Transcript at 40. Appellant claimed that he was "provoked" to do what he did and had acted in self-defense.

**{¶29}** At trial, appellant was asked to read the statement that he wrote for the police on the date in question. The following is an excerpt from his testimony at trial:

**{¶30}** Q: Could you just read it word for word what you wrote?

**{¶31}** A: Okay when employee got closer to me the truck driver got between us and shoved me back. I said don't put your hands on me and he then shoved me with something hard. I then swung at him in a self-defense motion missing him and grazing the employee at the same motion.

**{¶32}** Q: Okay and in that statement you say you struck Mr. Smith in the same motion?

**{¶33}** A: Uh…it says I… closer to me and drove the guy between us and the guy shoved me back and I… don't put your hands on me and I then swung at him in a self-defense motion missing him and grazing the employee is what I say here.

**{¶34}** Q: Okay that is different from your testimony today wouldn't you agree with that?

**{¶35}** A: No I would not agree with that.

**{¶36}** Q: Huh okay….

**{¶37}** A: It is all in motions.

**{¶38}** Transcript at 45-46.

**{¶39}** Appellant denied waiving the tire thumper at Smith and Ishnazarov and testified that he just held it up while telling them to leave him alone. According to appellant, "And he said go ahead hit me one time come on hit me one time", but admitted that he did not put such information in his statement to police. Trial Transcript at 47.

**{¶40}** Appellant admitted that he never called the police to report the incident.

**{¶41}** While Ishnazarov was subpoenaed, he never appeared for trial.

**{¶42}** The trial court, at the conclusion of the testimony, found appellant guilty of both offenses. Appellant was sentenced to ten (10) days in jail and fined a total of $350.00.

**{¶43}** Appellant now raises the following assignments of error on appeal:

**{¶44}** "I. APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶45}** "II. THE TRIAL COURT ABUSED ITS DISCRETION IN NOT OFFERING APPELLANT HIS RIGHT OF ALLOCUTION PRIOR TO SENTENCING."

I

**{¶46}** Appellant, in his first assignment of error, argues that his convictions for assault and disorderly conduct were against the sufficiency and manifest weight of the evidence.

**{¶47}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held as follows:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable

doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

**{¶48}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶49}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶50}** In the case sub judice, appellant was convicted of assault in violation of R.C. 2903.13 and disorderly conduct in violation of R.C. 2917.11. R.C. 2903.13 stated, in relevant part as follows: "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." In turn, R.C. 2917.11 states, in relevant part, as follows:" (A) No person shall recklessly cause inconvenience, annoyance, or

alarm to another by doing any of the following:(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;…".

{¶51} With respect to the charge of assault, appellant argues that there was insufficient evidence of physical harm to Ronald Smith. Appellant argues that Smith did not describe any injury, illness or physiological impairment.

{¶52} However, as is stated above, R.C. 2903.13 prohibits knowingly attempting to cause physical harm to another. There was testimony at trial that appellant approached Ronald Smith and Umidjon Ishnazarov in an aggressive and hostile manner and pushed both of them and that appellant punched Smith in the face, causing damage to his glasses. There was thus testimony that appellant intended to cause physical harm to another. With respect to the charge of disorderly conduct, there was testimony that appellant, after being asked to stop his violent behavior prior to the assault, continued his disorderly conduct and after the assault, grabbed a metal tire thumper out of his truck and was waiving it around at the victim.

{¶53} We find, based on the foregoing, that there was sufficient evidence supporting the convictions. With respect to manifest weight, we note that the trial court, as trier of fact, was in the best position to assess credibility and clearly did not find appellant credible. In fact, the trial court stated on the record, that it did not believe appellant's testimony and that believed the witnesses' testimony over appellant's testimony, including his testimony that he acted in self-defense.

{¶54} In short, we find that after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crimes of assault and disorderly conduct  proven beyond a reasonable doubt and that the trial court did not lose its way in convicting appellant.

{¶55} Based on the foregoing, appellant' first assignment of error is, therefore, overruled.

II

{¶56} Appellant, in his second assignment of error, argues the trial court erred in denying him his right to allocution pursuant to Crim.R. 32.

{¶57} Crim. R. 32 addresses the trial court's duty upon imposition of sentence. The rule provides, in relevant part, as follows:

{¶58} "(A)  Imposition  of  sentence.  Sentence  shall  be  imposed  without unnecessary delay. Pending sentence, the court may commit the defendant or continue or alter the bail. At the time of imposing sentence, the court shall do all of the following:

{¶59} "(1) Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment...."

{¶60} In the case sub judice, the trial court stated on the record after finding appellant guilty that "You have a right to make a statement before I sentence you, Do you care to make a statement sir?" Appellant, in response, stated as follows "Well actually here it is my word against his." Transcript at 50. The trial court then sentenced appellant.

{¶61} Based on the forgoing, we find that the trial court did not deny appellant the right to allocution pursuant to Crim.R. 32.

{¶62} Appellant's second assignment of error is, therefore, overruled.

**{¶63}** Accordingly, the judgment of the Licking County Municipal Court is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.